IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **DIERDRE ASHTON RHINEHART,** | |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **CITY OF GASTONIA,** | |
| Defendant. | |

**COMPLAINT**

**I. JURISDICTION**

1. This is an action seeking damages as well as legal, equitable and declaratory relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.*, as amended ("Title VII"), and under the common law and public policy of the State of North Carolina.

2. Jurisdiction of the Court is invoked pursuant to Title VII and 28 U.S.C. §§ 1331 and to the doctrine of pendant jurisdiction as to Plaintiff's state law claims.

3. Plaintiff's claims arise from unlawful discrimination and retaliation to which she was subjected while employed by the Defendant. Plaintiff, while serving as a sergeant in the Gastonia Police Department, was treated differently and less favorably than her male counterparts, was denied a promotion to the rank of captain in April 2005, and was subjected to

retaliation, unfair scrutiny and unlawful termination after she complained about the discriminatory failure to promote her.

## II. PARTIES

4. The Plaintiff is a citizen and resident of Gaston County, North Carolina.

5. Defendant City of Gastonia (the "City" or "Defendant") is a municipal corporation of the State of North Carolina. The City operates and controls the Gastonia Police Department (the "Department").

## III. FACTS

6. Plaintiff was employed by the Defendant in the Gastonia Police Department on or about May 29, 1985, and worked for the Department until she was terminated on or about December 16, 2005.

7. Plaintiff was hired as a Police Trainee and received various promotions finally being promoted to sergeant in about July 1998.

8. Plaintiff's job performance was consistently good. For example, in her July 2002 annual evaluation she received an overall rating of "Commendable" and the evaluation noted: "Sgt. Rhinehart is an asset to the shift and the department." Plaintiff received numerous merit raises including ones in 2001, 2002 and 2003 and continued to receive exemplary evaluations.

9. As of the spring 2005, Plaintiff was the Sergeant Coordinator in the Central District engaged in community policing activities. Because of the nature of her duties, Plaintiff was out of the office supervising officers in the district and attending community meetings for a large part of each day.

10. As of the spring 2005, Plaintiff was on the list for promotion to Captain in the Department.

11. In April 2005, Steve Duncan, a male police sergeant, was promoted to Captain in lieu of the Plaintiff and others.

12. Following Duncan's promotion, Plaintiff met with the Chief of the Department, T. L. Sult, male. Plaintiff advised Chief Sult that she believed Duncan's promotion had been discriminatory and unfair. She further related to Chief Sult that he favored male police officers including Duncan and that he maintained extensive social contacts with male officers including Duncan, contacts that were not maintained with female officers. Plaintiff also complained that Duncan has been given the opportunity to be an assessor for promotion decisions in other departments while Plaintiff had not.

13. A part of the promotion process in the Department is an assessment by police officers from outside of the Department. Having the opportunity to observe the promotion assessment process as an assessor is a benefit to an officer when he or she is seeking a promotion.

14. Upon hearing Plaintiff's claims of discrimination and unfair treatment, Chief Sult's demeanor changed and he became defensive concerning his actions and those of the Department.

15. Upon information and belief, Chief Sult then advised Captain Duncan about Plaintiff's meeting with the Chief. Defendant then began a course of action which eventually led to Plaintiff's termination.

16. The retaliation which Defendant visited upon Plaintiff included, but was not limited to, the following:

a) Captain Duncan began to keep a surreptitious file only on the Plaintiff and made false entries into that file;

3

b) Captain Duncan took the unusual step of taping a long rambling meeting he had with the Plaintiff on June 21, 2005;

c) On or about July 8, 2005, Captain Duncan forwarded the documents he created, including the tape of the June 21, 2005, meeting and other records he obtained from the Access Card Entry Data System used by the Department to its Internal Affairs Division; and

d) Captain Duncan submitted false allegations to Internal Affairs. Even though Internal Affairs noted Duncan had submitted false documents and made false statements he was not disciplined.

17. On August 11, 2005, Plaintiff met with Chief Sult and told him that she was being harassed. Rather than assisting the Plaintiff, Chief Sult then suspended Plaintiff with pay.

18. Plaintiff remained suspended from August 11 to December 16, 2005, when she was terminated. Her suspension was without pay from October 5 to December 16, 2005.

19. Among the reasons Plaintiff was terminated was her alleged dishonesty in falsifying the hours she worked. To reach this conclusion, Defendant relied on entries made in the Access Card Entry Data System.

20. The card entry is a security measure and has never been used or announced as a time card. Because of the design if that system, several officers may enter the Department after one officer had swiped his or her card.

21. Although Captain Duncan had discussed the time of arrival with the Plaintiff in the June 21, 2005, meeting, he never raised an issue about her duty hours after the June 21, 2005, meeting.

22. Plaintiff followed Captain Duncan's request regarding her reporting after the June 21, 2005, meeting.

23. The extraordinary efforts made by Defendant to "paper" Plaintiff's file, to seek information to discredit her, to submit false documents and statements to harm her, to suspend her and to terminate her were all done intentionally and maliciously to retaliate against her for opposing Defendant's discriminatory actions.

24. As a direct and proximate result of Defendant's actions catalogued above, Plaintiff suffered lost wages, humiliation and psychological damage.

25. The actions of the Defendant complained of herein were willful, wanton and intentional and were taken by Defendant to harm the Plaintiff.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

26. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation. The EEOC subsequently issued a Determination specifically finding that Plaintiff was subject to harassment by her supervisor because of her sex; that Defendant did not take appropriate actions to correct the harassment; that when Plaintiff complained about the harassment she was suspended and then discharged; and that the reasons proffered by Defendant for suspending and terminating Plaintiff were pretextual. On October 2, 2007, the Civil Rights Division of the United States Department of Justice issued a right-to-sue letter to Plaintiff. Plaintiff filed this action within ninety days of her receipt of this right-to-sue letter. Plaintiff has thereby exhausted all administrative remedies under Title VII and filed this case within the period required by that statute.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: Sex Discrimination and Harassment (Title VII)

27. Plaintiff realleges and incorporates all preceding paragraphs by reference.

28. By the actions described above, the Defendant subjected Plaintiff to discrimination and harassment because of her sex in violation of Title VII and North Carolina law, such violation being a continuing violation.

29. The Defendant's actions and omissions in violation of Title VII and the common law of North Carolina were undertaken willfully, wantonly and in reckless disregard for the Plaintiff's rights, entitling her to compensatory and punitive damages in excess of $10,000.

### SECOND CLAIM FOR RELIEF: Retaliation (Title VII)

30. Plaintiff realleges and incorporates all preceding paragraphs by reference.

31. By the actions described above, the Defendant retaliated against the Plaintiff due to her complaints of unlawful discrimination and harassment. Plaintiff ultimately suffered the ultimate adverse employment action, termination.

32. Defendant's actions and omissions, all in violation of Title VII and the common law of North Carolina, were undertaken willfully, wantonly, and with reckless disregard for the Plaintiff's rights, entitling her to compensatory and punitive damages in excess of $10,000.

### THIRD CLAIM FOR RELIEF: Wrongful Discharge (State Law Claim)

33. Plaintiff realleges and incorporates all preceding paragraphs by reference.

34. The Defendant's decision to discharge Plaintiff constituted a wrongful discharge under the common law in that it violated the public policy of the State of North Carolina as set out in N.C.G.S. §143-422.2.

35. The Defendant acted wantonly, willfully, and in disregard of the protected rights of Plaintiff, thus entitling her to an award of compensatory and punitive damages in excess of $10,000.

## VI. DAMAGES

36. As a result of the discrimination, harassment and retaliation claimed herein, Plaintiff has experienced pain and suffering, loss of earnings, loss of fringe benefits, loss of retirement benefits, loss of status, loss of enjoyment of life, and mental anguish and distress, including extreme worry, humiliation, loss of sleep and other damages including loss of professional reputation.

37. Plaintiff has been irrevocably injured by the discriminatory actions complained of herein. The injuries that Plaintiff suffered should be enjoined by this court. Plaintiff has no other adequate or complete remedy other than this proceeding to have the actions and practices of the Defendant as complained of herein remedied.

38. The actions of the Defendant as cataloged above were willful, wanton and purposeful such as to entitle Plaintiff to an award of punitive damages.

## VII. JURY TRIAL DEMANDED

39. Plaintiff hereby demands a trial by jury.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the discrimination, harassment and retaliation alleged herein be remedied in full and that the Court, after a jury trial:

1) Declare the actions complained of herein to be illegal;

2) Issue an injunction enjoining the Defendant, its agents, its employees, successors, attorneys and those acting in concert or participation with Defendant and at its direction, from

engaging in the unlawful practices set forth herein and any other employment practice shown to be in violation of Title VII, and the common law and public policy of North Carolina;

3) Award Plaintiff compensatory damages, including damages for mental anguish, pain and suffering, harm to Plaintiff's economic relations and opportunities, loss of earnings with cost of living adjustments, interest, fringe benefits, and retirement benefits;

4) Award Plaintiff compensatory damages to which she is entitled for the violation of the public policy and common law of the state of North Carolina;

5) Award Plaintiff punitive damages for the extreme and outrageous acts taken by Defendant in willfully violating both state and federal law;

6) Award Plaintiff reinstatement to the job she would now have but for Defendant's illegal actions with all appropriate wage increases and other benefits;

7) Award Plaintiff her costs and expenses in this action, including reasonable attorneys fees, costs and other litigation expenses; and

8) Grant such other and further relief as may be just and necessary to afford complete relief to Plaintiff.

Signed and dated this, the 21st day of December, 2007.

**s/ John W. Gresham**
John W. Gresham, NC Bar No.: 6647
Jonathan Wallas, NC Bar No: 4543
ATTORNEYS FOR PLAINTIFF
FERGUSON, STEIN, CHAMBERS, GRESHAM
   & SUMTER, P.A.
741 Kenilworth Avenue, Suite 300
Charlotte, NC 28204
Telephone: (704) 375-8461
Fax: (704) 334-5654
JGresham@FergusonStein.Com
*ATTORNEY FOR PLAINTIFF*