# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:07-CV-541-DCK

| | |
|---|---|
| DIERDRE A. RHINEHART, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF GASTONIA, )<br>)<br>Defendants. ) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on the "Motion for Summary Judgment" (Document No. 13) filed on February 17, 2009, by the City of Gastonia ("Defendant"). The Plaintiff opposes the motion. A hearing was held on May 19, 2009, at which respective counsel presented oral arguments. Having carefully considered the record, including the briefs (Document Nos. 14, 15, 18), evidence of record, oral arguments, and applicable authority, the undersigned will **deny** the motion for the following reasons:

### I. Facts and Allegations

Dierdre Rhinehart ("Plaintiff") was employed as a police officer by the Gastonia Police Department ("GPD") in Gastonia, North Carolina for over twenty years. She was promoted to sergeant in 1998 and was the highest-ranking female officer in the department. She generally received "commendable" to "excellent" reviews, and was awarded the national 2004 IACP Community Policing Award for her efforts in a model program regarding homelessness issues and for her leadership in various community groups. (Document No. 18-3, Exh. 2, p. 6 "Evaluation").

Plaintiff's most recent annual evaluation, approved on April 20, 2005, gave her an overall rating of "commendable." The evaluation described her as "an exceptional leader" who responded "positively to guidance from commanders" and as a supervisor who strives to be outstanding in

balancing the "needs of the city with her responsibilities toward her employees." (*Id*. at 8). The evaluation indicated that she was "an asset to the department," "has worked diligently to achieve the goals established for her," and rated her as "outstanding" for perfect attendance. (*Id*. at 8-9).

When a vacancy at a higher rank occurred in the spring of 2005, various officers including Plaintiff sought the promotion. An independent assessment team ranked her fourth of eight candidates. Ultimately, Plaintiff's competitor, Sgt. Steve Duncan (who was rated higher by the assessment team, based on his education and experience), was promoted to "Captain" on April 6, 2005, thereby becoming Plaintiff's supervisor. Plaintiff indicates she was not overly concerned about not getting this particular promotion because she knew there was another possible vacancy coming up soon and that she would have the chance to apply for that job.

At a meeting on April 21, 2005, Chief of Police Terry L. Sult encouraged Plaintiff to discuss how she felt about Duncan's promotion and any other concerns. At his repeated urging, she finally pointed out that Sgt. Duncan had been given the opportunity to be an assessor for promotion decisions in other departments, while Plaintiff had not, and that these assignments were advantageous to those seeking promotion. She also candidly voiced concerns that Chief Sult favored male officers and had excluded her from social activities, and that her efforts to remedy this had been ignored. She mentioned that Chief Sult and Sgt. Duncan often went to lunch together, and that based on Duncan's past history, she feared he would be "out to get her." According to Plaintiff, Chief Sult did not react well, and this discussion precipitated subsequent actions taken against her.

Chief Sult met with Cpt. Duncan several days later and relayed the substance of his conversation with Sgt. Rhinehart. (Duncan Deposition of January 12, 2009, pp. 29-30). Cpt. Duncan then began keeping a "dossier" on Sgt. Rhinehart. He asked her to attend a June 21, 2005

meeting with him. When she arrived, he had a tape recorder on his desk and proceeded to record the entire two-hour interview, although he spent only several minutes discussing any concerns about the need for accurate time records. Although he advised her that he wanted her to report into the office at the beginning of each work day at 8:30 a.m., Plaintiff points out that Duncan also advised her that he did not want "to hold her to too tight a standard and she needed the latitude to do her duties which often required her to attend meetings and work different hours." (Document No. 18, p. 7, citing tape of June 21, 2005 Meeting); (Dep. Of Cpt. Duncan, January 12, 2009, p. 86). Plaintiff points out that her work in community policing required variable hours due to the scheduling of evening community events and occasional breakfast meetings.

Afterwards, he sent the tape and his own notations of facts to the Internal Affairs Division for investigation. Plaintiff asserts that these purported "facts" were simply false and points to 75 pages of specific evidence in support. (Document No. 18, pp. 6-7, 12, 19). For example, in one instance, Cpt. Duncan indicated that he didn't "see" Sgt. Rhinehart at the office and erroneously assumed that she was tardy, although her time record showed otherwise. (*Id*., p. 6, pointing to Dep. Exh. 5, p. 1959). Another time, Cpt. Duncan claimed that Sgt. Rhinehart did not contact Dan Lowe with Gastonia Traffic Engineering about handicap signs, whereas Lowe confirmed that Rhinehart did in fact contact him. (*Id*. at 12, pointing to Exh. 6, p. 2065).

Plaintiff contends that Defendant simply ignored her information, despite the fact that Investigator Brafford, in the presence of Chief Sult acknowledged that many of Captain Duncan's allegations were unsubstantiated and were contradicted by civilians and police officers he had interviewed. Investigator Brafford indicated that his investigations did not support the allegation that Plaintiff had violated Duncan's directives regarding her duty day as Duncan alleged. (*Id*., p. 19,

citing Brafford Dep. pp. 65-70). Essentially, Cpt. Duncan as supervisor, kept notes regarding Plaintiff for over three months and then recommended her demotion without ever giving her a written reprimand indicating any concerns with her job performance. (Duncan Deposition, January 12, 2009, pp. 50-53, 102-105). On August 1, 2005, he recommended that Plaintiff be demoted to patrol officer and put on a year's probation. (*Id*., p. 10, citing Dep. 9, pp. 2030, 2073).

On August 11, 2005, Plaintiff met with Chief Sult and told him that she wanted this "harassment" to stop. (*Id*., p. 14). Instead, he put her on administrative leave and subsequently recommended that her employment be terminated. He cited various alleged policy violations cited by Sgt. Duncan as the basis for his decision. Plaintiff strenuously denies that any of the alleged infractions were well grounded and points to numerous locations in the record tending to substantiate her assertions. (*Id*., pp. 8-12, 19). In their briefs and at the hearing, the parties have discussed at considerable length various other meetings and events. The Court need not recount the lengthy details here. For purposes of this motion, the Court need only note that Sgt. Rhinehart was suspended without pay on October 5, 2005, that her employment was terminated on December 16, 2009, and that she has exhausted her administrative remedies.

Plaintiff, through counsel, filed suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq*., as amended ("Title VII"), and under the state law and public policy of North Carolina. In her three-count complaint, Plaintiff alleges that, despite her previous exemplary record and over twenty years of experience as a police officer, she was discriminated against, retaliated against, and wrongfully discharged. (Document No. 1, ¶¶ 3, 27-35).[1]

---

[1] At the motion hearing, Plaintiff indicated that she was not proceeding on a "failure to promote" claim.

## II. Analysis

### A. Standard for Summary Judgment

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Volvo Trademark Holding v. Clark Machinery Co.*, 510 F.3d 474, 481 (4th Cir. 2007); Fed. R. Civ. P. 56(c). The Court must construe the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 955 (2008).

### B. Gender Discrimination under Title VII of the Civil Rights Act

Plaintiff brings a claim of gender discrimination under 42 U.S.C. §§ 2000e-2(a). (Document No. 1, ¶3 "Plaintiff's claims arise from unlawful discrimination and retaliation to which she was subjected while employed by the Defendant").

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) provides in relevant part:

> a) It shall be an unlawful employment practice for an employer--
> **(1)** to ... discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000e-2(a).

At the summary judgment stage, a plaintiff must produce direct evidence of discrimination or, if the claim is based primarily on circumstantial evidence, must meet the shifting evidentiary

5

burdens imposed under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See also, *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985). Here, as in most employment cases, the evidence is circumstantial.

To establish a *prima facie* claim of gender discrimination, Plaintiff must show: (1) that she is within a protected group; (2) was qualified for the job at issue; (3) was subjected to an adverse employment action; and (4) that this action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 801. It is alleged that Plaintiff, a well-qualified female police officer, was subjected to enhanced scrutiny and then terminated from employment after she voiced concerns about gender discrimination and disparate treatment within the police department. She has pointed to sufficient evidence of record to establish a *prima facie* case.

The burden then shifts to Defendant to produce evidence that the adverse employment action was taken for legitimate, non-discriminatory reasons. Of course, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). Defendant contends that Plaintiff was "not meeting job expectations." Poor job performance is a legitimate, nondiscriminatory reason for termination. *EEOC v. Navy Federal*, 424 F.3d 397, 407 n. 10 (4th Cir. 2005).

Although the police department had a policy of progressive discipline regarding tardiness, Sgt. Duncan never applied the policy to Sgt. Rhinehart. Instead, he alleged that she had been "deceptive" in his interview with her, thereby multiplying the alleged tardiness infraction into other alleged violations. In discharging her, Chief Sult cited alleged policy violations regarding her alleged (1) failure to comply with direct orders, (2) attention to duty, (3) supervision/field operations, (4)

6

reporting for duty, (5) truthfulness, (6) obeying orders, (7) conduct unbecoming an officer, (8) respect of constitutional rights, and (9) courtesy. On its face, this provides a legitimate, nondiscriminatory reason for termination.

However, Plaintiff vigorously contends that the Defendant's reasons were merely a pretext for gender discrimination. *Burdine*, 450 U.S. at 253. Plaintiff points out that the Defendant: 1) disciplined her for purported "deception" while ignoring the substantial evidence of Cpt. Duncan's own untruthfulness in the investigation; 2) failed to follow its own progressive discipline policy with respect to her; 3) subjected her to enhanced scrutiny after the April 21, 2005 meeting with Chief Sult (at which she had discussed departmental gender discrimination and disparate treatment affecting her); and 4) terminated her employment despite a long record of favorable reviews, with the most recent one evaluating her as "outstanding" for perfect attendance. (Document No. 18, pp. 21-22). Plaintiff also points to documentary evidence showing that after Cpt. Duncan's June 21st conversation with Sgt. Rhinehart, she complied with Duncan's directive. (*Id.*, p. 8, citing Brafford Dep. p. 70; Dep. Exh. 5, pp. 1959-1962, 1977-2028). Chief Sult acknowledges that Rhinehart also complied with his directive. (*Id.*, p. 9, citing Sult Dep. p. 136).

Plaintiff asserts that this circumstantial evidence of pretext is sufficient under the standard set out in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 97-101 (2003) (holding that direct evidence of gender discrimination is not required in order to prove employment discrimination under Title VII). Construing the facts and all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has made a sufficient showing of pretext to withstand summary judgment. Plaintiff's gender discrimination claim under Title VII may proceed.

## C. Retaliation under Title VII of the Civil Rights Act

Plaintiff also asserts a retaliation claim under Title VII, 42 U.S.C. § 2000e-3(a). Title VII, at 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to retaliate against an employee who "has opposed" any employment practice made unlawful under Title VII. Claims of retaliation are subject to the *McDonnell-Douglas* burden-shifting analysis. *See King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003); *Pitrolo v. Buncombe, N.C., County of*, 2009 WL 1010634, *1 (4th Cir.).

To establish a *prima facie* case of retaliation, Plaintiff must show that: 1) she engaged in a protected activity; 2) that her employer took a materially adverse employment action against her; and (3) that there was a causal link between the two events. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005), *cert. denied*, 547 U.S. 1041 (2006). If she does so, the burden shifts to Defendant to offer a legitimate non-retaliatory reason for its actions. *Id*. If Defendant does so, the burden shifts back to Plaintiff to show that the reason offered was a pretext for retaliation. *Id*.

Plaintiff must show that she engaged in protected activity within the meaning of § 2000e-3(a). The United States Supreme Court recently explained that the protection against retaliation afforded by Title VII of the Civil Rights Act of 1964 extends to an employee who speaks out about discrimination when answering an employer's questions. *Crawford v. Metropolitan Gov. Of Nashville & Davidson*, –U.S. –, 129 S.Ct. 846, 851 (2009). The Supreme Court emphasized that "nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question." *Id*. at 851.

Plaintiff points to the meeting on April 21, 2005, at which Chief of Police T.L. Sult asked

her questions about her view of Duncan's promotion and other concerns. She answered that Sgt. Duncan was given the opportunity to be an assessor for promotion decisions, but she was not, and that being an assessor was advantageous in pursuing promotion. She also candidly told him that he favored male officers and had excluded her from social activities with them. This amounts to protected activity for purposes of a retaliation claim. *See Crawford*, 129 S.Ct. at 851.

Chief Sult and Cpt. Duncan met thereafter and discussed the substance of this conversation. Capt. Duncan began keeping track of suspected minor time infractions while advising Rhinehart that he did not want "to hold her to too tight a standard and she needed the latitude to do her duties which often required her to attend meetings and work different hours." Capt. Duncan then initiated an internal investigation into Plaintiff's alleged "inattention to duty." (Document No. 18, Ex. 8, p. 4); (Dep. Exh. 5, p. 1927). He initiated his complaint shortly after Plaintiff complained of various discriminatory activities in the department, including some regarding him. It is alleged that Plaintiff's employment was terminated largely on the basis of her complaints. Construing these facts and all reasonable inferences in Plaintiff's favor, the Court finds that the Plaintiff has shown a sufficient causal link to establish a *prima facie* case of retaliation for purposes of the *McDonnell-Douglas* burden-shifting analysis. *See King*, 328 F.3d at 150-51.

As already discussed, the alleged policy violations on their face would provide legitimate grounds for dismissal. However, Plaintiff points to evidence showing that various alleged infractions were not well-grounded. The Court finds it particularly noteworthy that the criticism of Plaintiff escalated dramatically immediately after Sgt. Duncan (Plaintiff's competitor) was promoted and after the meeting with Chief Sult (when Rhinehart first mentioned instances of gender discrimination in the police department in response to questioning). Plaintiff points to sufficient circumstantial

evidence suggesting that the investigation was likely initiated in response to her complaints of discrimination. (Document No. 18, pp. 6-7, 12, 19). For purposes of this motion, Plaintiff has carried her burden of showing that the Defendant's stated reasons were merely a pretext for retaliation. Plaintiff's retaliation claim under Title VII may proceed.

### D. North Carolina's Equal Employment Practices Act

Last, Plaintiff raises a state claim of wrongful discharge in violation of public policy. The North Carolina Equal Employment Practices Act, N.C. Gen.Stat. § 143-422.1 *et seq*. ("NCEEPA"), includes a "Legislative Declaration" which sets forth:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees. N.C.G.S. § 143-422.2.

Courts have interpreted N.C. Gen.Stat. § 143-422.2 to allow a plaintiff to bring a common law claim for wrongful discharge based on violation of public policy. *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 721 (4th Cir. 2003) (remanding for consideration of the plaintiff's claims for wrongful discharge under § 143-422.2 on account of race or gender discrimination); *Hughes v. Hewlett Packard Corp*., 2008 WL 4372794, *2 (W.D.N.C. 2008).

Plaintiff has the burden of pleading that her termination occurred for a reason that violates public policy. *McHan v. Cherokee County*, *NC*, 2006 WL 3694540, *3 (W.D.N.C. 2006); *Imes v. City of Asheville*, 163 N.C.App. 668, 670 (2004). Here, Plaintiff has alleged that her voicing of concerns about gender discrimination was the real reason for her discharge. She points out that the department did not follow its own policy of progressive discipline regarding alleged attendance and

that an investigation against her was initiated after she complained of discrimination. For the reasons already discussed with respect to her Title VII claims, Plaintiff has pointed to sufficient evidence to withstand summary judgment on her claim of wrongful discharge under state law.

The Court notes that the Defendant correctly argues that North Carolina has not recognized "a private right of action under North Carolina for retaliation under § 143-422.2." *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir.2003); *Webb v. Starbucks Corp.*, 2008 WL 4891106, *8 (W.D.N.C. 2008). However, Defendant misconstrues the allegations of Plaintiff's Complaint. Moreover, Plaintiff's counsel specifically clarified at the hearing that Plaintiff's state claim was for wrongful discharge in violation of public policy, and not a separate claim for retaliation.

### E. Conclusion

Based on the evidence of record and the arguments before the Court, the undersigned finds that genuine issues of material fact preclude summary judgment in this case.

**IT IS, THEREFORE, ORDERED** that the "Defendant's Motion for Summary Judgment" (Document No. 13) is **DENIED.**

**IT IS SO ORDERED**.

Signed: September 9, 2009

David C. Keesler
United States Magistrate Judge